# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| GRADY F. DORTCH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 15-0064-CV-W-DGK-P |
| vs. | ) | |
| | ) | |
| MICHAEL BOWERSOX, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the South Central Correctional Center in Licking, Missouri, has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2009 convictions and sentences for first-degree murder and armed criminal action, which were entered in the Circuit Court of Callaway County, Missouri. Petitioner's convictions were affirmed on direct appeal. Doc. No. 14-6. Petitioner's motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was denied following an evidentiary hearing (Doc. No. 14-7, pp. 24-31), and that denial was affirmed on appeal therefrom (Doc. No. 14-11).

Petitioner raises six grounds for relief. Because this Court finds that Grounds 1 and 4-6 are procedurally defaulted and that Grounds 2 and 3 are without merit, the petition for writ of habeas corpus is DENIED, a certificate of appealability is DENIED, and this case is DISMISSED.

### Statement of Facts

The Missouri Court of Appeals, Western District, summarized the facts as follows:

> . . . . [Petitioner] and the victim, Miles Heard, were friends. In October 2008, they argued at a gas station in Columbia, Missouri, about counterfeit money.

[Petitioner's] friend, Anthony Rainey, also known as "Ghost," was also there. Later that month, the victim was driving around with his fiancé when they pulled up behind [Petitioner]. A short time after the cars separated, [Petitioner] left a voicemail on the victim's phone saying, "I could have put a bullet in your head right there." [Petitioner] and the victim had another argument on October 31, 2008, in the parking lot of a nightclub. The victim punched [Petitioner] at least once, and [Petitioner] hit the victim once. The fight broke up when a few bystanders yelled out that the police were coming. [Petitioner] went to his trunk, pulled out a book or duffel bag, and told the victim, "Run up and I'll kill you." The dispute ended once the police arrived. Again, Ghost was with [Petitioner] that night. The next day, [Petitioner] told a co-worker about the fight at the nightclub, that he got a duffel bag out of his trunk, and that he "almost turned his [the victim's] white shirt red."

In November 2008, people gathered at a local community park to commemorate and celebrate the election of President Barack Obama. The victim was at this gathering when [Petitioner] and Ghost arrived in [Petitioner's] car. The victim walked towards [Petitioner's] car. As he approached, apparently intent on confronting [Petitioner], [Petitioner] exited the driver's seat, retrieved a gun from the trunk, and reentered the driver's seat. After doing so, [Petitioner] and Ghost pulled out of the parking space to leave the park but got stuck behind traffic.

In a truck behind [Petitioner] and Ghost was Malcomx Cunningham. Cunningham heard the victim approach [Petitioner] and saw the victim's fists clenched at his sides. Cunningham overheard the victim demand that [Petitioner] get out of his car. Ghost, who was sitting in the passenger seat, claimed that before the victim approached, he saw him grab something and hold it as though he were hiding it in his hands. Ghost also testified that he feared for his and [Petitioner's] lives as the victim approached the driver's side window.

[Petitioner] pointed a gun out of this car window. The victim "froze," and [Petitioner] fired three or four times, hitting the victim in the chest. The victim turned and ran back across the parking lot, ultimately collapsing. After the gunshots, [Petitioner] "peeled out of the park." No witnesses saw the victim with a gun. The certified medical technician who was in the parking lot and delivered first aid to the victim did not locate any weapons on the victim's person. The victim later died at a local hospital. [Petitioner] turned himself in to the Columbia Police Department on November 5, thirty hours after the shooting.

Doc. No. 14-11, pp. 3-4 (alterations added).

Before the state court findings may be set aside, a federal court must conclude that the

2

state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is Petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because Petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## Discussion

Petitioner raises the following six grounds for relief: (1) the prosecutor made comments during closing argument regarding Petitioner's failure to testify at trial; (2) trial counsel was ineffective for failing to strike Venirepersons 17 and 26; (3) trial counsel was ineffective for not calling William Stapleton to testify; (4) trial counsel was ineffective for not calling Petitioner to testify; (5) trial counsel was ineffective for failing to present evidence demonstrating that Petitioner had depression and paranoia; and (6) trial counsel was ineffective for failing to object during the state's closing argument. Doc. No. 1, pp. 3-20. Respondent contends that Grounds 1 and 4-6 are procedurally defaulted and that Grounds 2 and 3 are without merit. Doc. No. 9, pp. 3-8. The Court addresses those arguments below.

### I. Grounds 1 and 4-6 are procedurally defaulted.

Respondent first argues that Petitioner procedurally defaulted Grounds 1 and 4-6, in that Ground 1 was not properly preserved at trial and was reviewed only for plain error on direct appeal, Ground 4 was raised in Petitioner's amended Rule 29.15 motion but was not included in

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

his post-conviction appeal, and Grounds 5 and 6 were not raised in Petitioner's amended Rule 29.15 motion. Doc. No. 9, pp. 3-4, 7-8. In reply, Petitioner argues that the Missouri Court of Appeals' plain error review of Ground 1 should be interpreted as a full review of that claim. Doc. No. 13, p. 2-3. Petitioner further argues that, although he procedurally defaulted Grounds 4-6, this Court should excuse the default of those claims under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). *Id*. at 14-15.

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995), *cert. denied*, 516 U.S. 1056 (1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before presenting those issues in an application for habeas relief in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." *Sloan*, 54 F.3d at 1381.

Petitioner procedurally defaulted Grounds 1 and 4-6. Petitioner procedurally defaulted Ground 1 by failing to properly preserve Ground 1 at trial through objection or in a motion for new trial. Doc. No. 14-6, p. 5. Although the Missouri Court of Appeals, at its discretion, reviewed this claim for plain error (*Id*. at 5-13), a state court's discretionary review for plain error does not excuse the procedural default of an unpreserved claim. *Clark v. Bertsch*, 780 F.3d 873, 875-77 (8th Cir. 2015) (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1253 (8th Cir. 1985)). Petitioner procedurally defaulted Ground 4 by failing to raise it on post-conviction appeal and Grounds 5-6 by failing to raise them in his initial post-conviction proceeding or on appeal therefrom. *See Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997) (recognizing that failure to

4

present claims in the Missouri Courts at any stage of direct appeal or post-conviction proceedings is a procedural default), *cert. denied*, 523 U.S. 1010 (1998). A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner fails to establish cause for the procedural defaults of Grounds 1 and 4-6. As set forth above, Petitioner cannot provide cause for the procedural default of Ground 1 based on the discretionary plain error review of that claim. As to Petitioner's procedural default of Grounds 4-6, Petitioner fails to establish cause for the procedural default of these claims under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). In *Martinez*, the United States Supreme Court recognized that ineffective assistance of post-conviction motion counsel could qualify as cause excusing the failure to raise a claim in an initial post-conviction proceeding. Initially, *Martinez* cannot provide cause for the procedural default of Ground 4 because that claim was raised in Petitioner's initial post-conviction proceeding but was not raised in his post-conviction appeal. *Arnold v. Dormire*, 675 F. 3d 1082, 1087 (8th Cir. 2012) (*Martinez* offers no support, however, for the contention that the failure to preserve claims on appeal from a post-conviction proceeding can constitute cause.").

Insofar as *Martinez* applies to Grounds 5 and 6, under *Martinez*, a petitioner "may establish cause for a procedural default . . . in two circumstances: where the state courts did not appoint counsel in the [initial post-conviction] proceeding for an ineffective-assistance-at-trial claim; and where appointed counsel in the [initial post-conviction] proceeding . . . was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984)." *Martinez*, 132 S. Ct. at 1312.

"Thus, the assistance rendered must have been constitutionally substandard and prejudice must have resulted therefrom." *Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004) (citing *Strickland*, 466 U.S. at 687). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Furthermore, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the [underlying] claim has some merit." *Martinez*, 132 S. Ct. at 1318.

Petitioner fails to demonstrate that post-conviction counsel was ineffective under the foregoing standard. Petitioner's conclusory assertion that "[a]ppointed counsel did not properly present [P]etitioner's claims in initial-review collateral proceedings" is insufficient to demonstrate that post-conviction counsel was ineffective. Doc. No. 11, p. 15; *see Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990) ("[P]etitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified."). Petitioner does not provide factual support for this assertion and does not elaborate on why his post-conviction counsel failed to raise these claims. Moreover, it appears from the record that post-conviction counsel reviewed Petitioner's case file and trial transcripts and asserted what he felt to be the most meritorious claims. Doc. No. 14-7, pp. 12-23. Lastly, Petitioner does not demonstrate that the underlying claims of ineffective assistance of counsel in Grounds 5 and 6 were so "substantial" that counsel's failure to raise them rendered his assistance ineffective. *See Martinez*, 132 S. Ct. at 1318. Consequently, Petitioner fails to provide cause for the procedural defaults of Grounds 1 and 4-6.

Petitioner fails also to show that a fundamental miscarriage of justice will result if his

defaulted claims are not considered. *See Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (a petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception), *cert. denied,* 549 U.S. 1036 (2006). Consequently, Grounds 1 and 4-6 are procedurally defaulted and will be denied.

## II. Grounds 2 and 3 are without merit.

In Ground 2, Petitioner asserts that trial counsel was ineffective for failing to strike Venirepersons 17 and 26. Doc. No. 1, p. 10. In Ground 3, Petitioner claims that trial counsel was ineffective for not calling William Stapleton to testify. *Id*. at 13. Respondent contends that Grounds 2 and 3 are without merit, because the state appellate court's decision denying these claims was reasonable. *Id*. at 4-7.

In order for Petitioner to successfully assert a claim for ineffective assistance of trial counsel, Petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. *Strickland*, 466 U.S. at 687-88. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsels unprofessional errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. This Court, moreover, may not grant habeas relief

Case 4:15-cv-00064-DGK   Document 15   Filed 08/07/15   Page 7 of 12

unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in *Strickland*." *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

As to Ground 2, the Missouri Court of Appeals, Western District, found that Petitioner failed to satisfy the prejudice prong of *Strickland* as follows:

> . . . [Petitioner] claims that defense counsel was ineffective for failing to strike Verniremen Numbers 17 and 26 after they agreed with another venireman, who was ultimately struck for cause, that he would probably give more credibility to the testimony of police officers than to the testimony of an incarcerated person. [Petitioner's] argument is based on the following exchange during voir dire:
>
>> Defense Counsel: Is there any—Would you be able to listen to a law enforcement officer and evaluate their testimony? Would you give it more weight, less weight, or just about the same weight as every other witness?
>>
>> Venireman Number 3: To be honest, I think if someone was incarcerated and I was listening to their testimony and I was listening to the police, I would probably give the police more credibility than I would—
>>
>> Defense Counsel: Thank you. I appreciate—I appreciate you being honest about that.
>>
>> Is there anybody else that agrees with Number 3?
>
> (Show of hands.)
>
>> Defense Counsel: Number 17, you agree with what Number 3 said?
>>
>> Venireman Number 17: Uh-huh.
>>
>> Defense Counsel: Number 18?
>>
>> Venireman Number 18: Yeah.
>>
>> Unidentified Venireman: I agree with it.
>>
>> Court Reporter: I need numbers.

8

Defense Counsel: Let's start with Number 26.

Venireman Number 26: Number 26. I agree with them.

Several other venire members responded that they also agreed with Number 3's statement. Venireman Number 3 was subsequently removed for cause. Defense counsel did not move to strike Number 17 or Number 26, and they both served on the jury.

. . . .

Review of the entire voir dire reveals that Veniremen Numbers 17 and 26 expressed a bias in favor of police testimony over the testimony of other witnesses. No further individual questioning was pursued by the trial court or counsel concerning their biases. They should have been stricken from the jury, and defense counsel was ineffective in failing to strike them.

The inquiry does not end here, however. On direct appeal of trial court rulings on challenges for cause, reversal is required only if the defendant has been prejudiced. *Draper*, 675 S.W.2d at 865. *See also Carnes*, 945 S.W.2d at 596. A defendant has been held not to be prejudiced when the police officer did not provide any elements of the state's case, the important evidence came from other witnesses, and the officer did not testify to any truly contested issue. *Id.* . . .

On a postconviction appeal claiming ineffective assistance of counsel for failure to strike a venireperson who was biased in favor of police testimony, no prejudice was found where the law-enforcement witness's testimony was cumulative to the lay-person's testimony. *Moore*, 407 S.W.3d at 177 . . . .

Likewise, in this case, Veniremen Numbers 17 and 26's partiality toward police testimony was not outcome determinative. The State presented twenty-three witnesses at trial. The majority of the witnesses were people who witnessed the several confrontations between [Petitioner] and the victim in October and November 2008. Their testimony established the essential elements of the offenses. While several police officers also testified for the State, many of them testified only about the processing of the crime scene and collection of evidence. Other police officer testimony was cumulative to the testimony of non-law enforcement witnesses. For instance, Officer Weber testified that he saw two men fighting at the nightclub on Halloween but could not positively identify the men as [Petitioner] and the victim. But at least two other witnesses, who were in the parking lot of the nightclub that night, testified about the fight between [Petitioner] and the victim. A third witness,

9

the victim's girlfriend, also testified that the victim told her that he had fought with [Petitioner] that night.

Likewise, Officer Short's testimony was cumulative to the testimony of other witnesses. He testified about statements made to him by Lee Gooden regarding what [Petitioner] told him the day after the fight at the nightclub. According to the officer, Gooden told him that [Petitioner] said he was going to kill the victim. Gooden, however, also testified at trial that the day after the nightclub fight, [Petitioner] told him that it wasn't over between him and the victim and that "he was going to get him [the victim]." Officer Short also testified that he interviewed Rodney Oliver, who told him that he saw [Petitioner] shoot the victim after the victim walked up to [Petitioner's] car to end their feud. Although Oliver testified at trial that he only saw the victim walk away from where they were talking and then he heard a gunshot, Cunningham, who was waiting to exit the park behind [Petitioner] car, testified that he saw [Petitioner] point a gun out of the window of his car and shoot the victim. The police officers that testified at trial did not testify to any truly contested issue or provide any elements of the State's case. Their credibility was not a significant issue at trial. [Petitioner] was not prejudiced. . . . The record does not show the outcome would have been any different without Venireman Numbers 17 and 26 on the jury. The motion court did not clearly err in denying this claim.

Doc. No. 14-11, pp. 6-11 (alterations added).

The Missouri Court of Appeals, Western District, denied Ground 3 as follows:

. . . . [Petitioner] claims that defense counsel was ineffective for failing to call William Stapleton as a witness at trial. He asserts that Stapleton's testimony that he saw the victim approach [Petitioner's] vehicle in an aggressive manner with a gun on his person and that he saw one of the victim's friends remove the gun after the victim had collapsed would have supported his defense of self defense.

. . . .

Defense counsel testified at the evidentiary hearing that he planned to call Stapleton to testify at trial until Kelly McCollum told him something that made him believe Stapleton would not be a helpful witness for the defense. Although he could not recall at the evidentiary hearing what that information was, he testified that he wrote a note in his file at the time of trial that Stapleton would not be a good witness for the defense and that he made a strategic decision to not put Stapleton on the stand based on that information. The motion court found that defense counsel's decision not to call Stapleton as a witness was based upon trial strategy. The motion court did not clearly err in its findings of fact and conclusions of law.

10

Doc. No. 14-11, pp. 11-12.

The findings of the state appellate court as to both Grounds 2 and 3 are reasonable and are entitled to deference under Section 2254(d). In holding that Petitioner's ineffective assistance of trial counsel claims did not merit post-conviction relief, the state appellate court identified and applied reasonably the *Strickland* standard. Doc. No. 14-11, pp. 6-12. "'Surmounting *Strickland's* high bar is never an easy task.'" *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Id.* "The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Id.* (internal quotations and citations omitted). Accordingly, a habeas petitioner must show that there is no "reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Petitioner fails to make such a showing in regard to either Grounds 2 or 3. As to Ground 2, Petitioner fails to establish that the state appellate court made an unreasonable determination that Petitioner was not prejudiced by trial counsel's failure to strike Venirepersons 17 and 26, in that the police officers' testimonies were either cumulative of the testimonies of non-law enforcement witnesses who actually witnessed the several confrontations between Petitioner and the victim or were not used to establish an essential element of the crime. Doc. No. 14-11, pp. 6-11. As to Ground 3, the state appellate court made a reasonable finding that trial counsel investigated calling Stapleton as a witness but then made a reasonably strategic decision not to call Stapleton when he was given reason to doubt the benefits of Stapleton's testimony. *Id.* at 11-12. "[T]he courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed . . . and his

11

best judgment as to the attitudes and sympathies of judge and jury." *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987); *see also Shaw v. U.S.*, 24 F.3d 1040, 1042 (8th Cir. 1994) (trial counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful).

Because the state courts' determinations as to both Grounds 2 and 3 did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Grounds 2 and 3 will be denied.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because Petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

## Conclusion

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED, a certificate appealability is DENIED, and this case is DISMISSED.

It is so **ORDERED**.

 /s/ Greg Kays_____
 GREG KAYS
 CHIEF UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: <u>August 7, 2015</u>.

12